**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-14082-CIV-CANNON**

**GERALD WHITE**, individually and
on behalf of all others similarly situated; and
**TONY MALONE**, individually and on
behalf of all others similarly situated,

Plaintiffs,

v.

**ARCADIA CONSUMER HEALTHCARE, INC.**,
a Delaware Corporation,

Defendant.

______________________________/

**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

## TABLE OF CONTENTS

FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND .......... 1
TABLE OF CONTENTS .......... 2
THE PARTIES .......... 3
JURISDICTION AND VENUE .......... 4
CLASS ALLEGATIONS .......... 4
CAUSES OF ACTION .......... 6
First Cause of Action .......... 6
Second Cause of Action .......... 13
Third Cause of Action .......... 18
Fourth Cause of Action .......... 23
Fifth Cause of Action .......... 28
Sixth Cause of Action .......... 33
Seventh Cause of Action .......... 38
JURY DEMAND .......... 43
PRAYER FOR RELIEF .......... 43

Plaintiffs Gerald White and Tony Malone ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant Arcadia Consumer Healthcare Inc. ("Defendant" or "Arcadia") regarding Defendant's sale of its Fungi-Nail products sold in Pen, Ointment, and Liquid form (the "Fungi-Nail Products"), based upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief as follows.

**THE PARTIES**

1. Plaintiff White is a Florida citizen residing in Vero Beach, Florida. In or around August 2025, Plaintiff White purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Spray from the foot care section of a Walmart store located in Vero Beach, Florida near his residence for approximately $11.00. Plaintiff White has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

2. Plaintiff Malone is a Florida citizen residing in Milton, Florida. On or around February 13, 2025, Plaintiff Malone purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Pen, from the Winn-Dixie store located Milton, Florida near his residence for approximately $7.01. Plaintiff Malone has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

3. Plaintiffs would not have purchased Defendant's Fungi-Nail Products if they knew that Fungi-Nail Products do not treat nail fungus.

4. Plaintiffs now know that Defendant's Fungi-Nail Products do not treat nail fungus. Plaintiffs intend to purchase an over-the-counter antifungal product for nail fungus again in the near future. Plaintiffs regularly shop at the same retailers where they purchased Fungi-Nail Products, including Walmart and Winn-Dixie, and will encounter Defendant's Fungi-Nail Products during those shopping trips. Plaintiffs will purchase Fungi-Nail Products in the future if Defendant truthfully labeled the product or reformulated it so that it is effective for nail fungus, but Plaintiffs are currently unable to rely on Defendant's labeling and marketing to determine whether Fungi-Nail Products have been changed or are effective for that purpose. Because of Defendant's ongoing labeling, Plaintiffs face a real and immediate risk of being misled again when shopping for antifungal treatment and they seek injunctive relief to prevent future deception.

5. Arcadia is a Delaware corporation with its principal offices located in Bridgewater, New Jersey. Arcadia does substantial business, including selling its products, in Florida, and also in the Southern District specifically.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this class action pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). Plaintiffs, Florida citizens, bring this action on behalf of a proposed class of similarly situated individuals against Defendant, including a corporation incorporated and with its principal place of business outside the State of Florida. The amount in controversy exceeds $5,000,000, and the proposed class includes more than 100 members.

7. Venue is appropriate in this District under 28 U.S.C. § 1391 because, among other things: (a) Plaintiff White resides in this District; (b) Plaintiff White purchased Fungi-Nail Products in this District; and (c) many of the acts and omissions that give rise to the claims for relief alleged in this action took place in this District.

## CLASS ALLEGATIONS

8. Plaintiffs bring this action on their own behalf and pursuant to Federal Rule of Civil Procedure 23. Plaintiffs intend to seek certification of the class defined as follows (the "Class" or "Class Members"):

> All persons residing in the State of Florida who purchased Fungi-Nail Products during the period beginning four years from the date of the filing of the original Complaint to the date of class certification.

9. Excluded from the Class are: (a) Defendant, including any entity in which Defendant had a controlling interest, are parents or subsidiaries of, or which are controlled by Defendant; (b) the officers, directors, and legal representatives of Defendant; and (c) the judge and the court personnel in this case as well as any members of their immediate families. Plaintiffs reserve the right to amend the definition of the Class if discovery, further investigation and/or rulings by the Court dictate that it should be modified.

10. *Numerosity*. Class Members are so numerous that the joinder of all is impractical. While the exact number of Class Members is unknown to Plaintiffs at this time, given the amount of Defendant's Fungi-Nail Products sold in Florida, it stands to reason that the number of Class Members is at least in the thousands. Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, such as account information and sales records.

11. *Commonality and Predominance*. There are questions of law and fact common to Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendant's Fungi-Nail Products contain the name "Fungi-Nail" and whether the Fungi-Nail Products' labels' contain the claim "KILLS FUNGUS";

b. Whether Defendant's Fungi-Nail Products' labeling created the impression among their customers that Fungi-Nail Products would kill nail fungus;

c. Whether a reasonable person would have read the statements "Fungi-Nail" and "KILLS FUNGUS" and any accompanying language to mean that Fungi-Nail Products had been scientifically proven to kill nail fungus;

d. Whether the "ANTI-FUNGAL" Fungi-Nail Products kill nail fungus;

e. Whether it has been scientifically proven that Fungi-Nail Products kill nail fungus;

f. Whether Defendant knew or should have known that it had not been scientifically proven that the Fungi-Nail Products fail to kill nail fungus;

g. Whether Defendant knew or should have known that Fungi-Nail Products do not kill nail fungus;

h. The nature of the relief, including equitable relief, to which Plaintiffs and Class Members are entitled; and

i. Whether Plaintiffs and Class Members are entitled to damages, civil penalties and/or injunctive relief.

12. *Typicality*. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs, like other Class Members, purchased Fungi-Nail Products that claimed, "KILLS FUNGUS," but would not in fact kill nail fungus.

13. *Adequacy of Representation*. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs have retained competent counsel experienced in litigation of class actions, including consumer class actions, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and Class Members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief. Therefore, all Class Members will be fairly and adequately represented by Plaintiffs and their counsel.

14. *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in the management of this action as a class action, and the disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

15. Class certification is also appropriate because Defendant had acted or refused to act on grounds generally applicable to all Class Members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Fraud**

**(By All Plaintiffs individually and on behalf of the Class against Defendant)**

16. Defendant is a corporation headquartered in Bridgewater, New Jersey, that, among other things, manufactures and sells consumer healthcare products.

17. Defendant sells to retailers for resale certain healthcare products, including products for hair and scalp care, digestive health, vitamins, minerals, supplements, first aid, oral care, cough and cold, and foot care.[1] Among Defendant's most successful products is its line of Fungi-Nail products sold in Pen, Ointment, and Liquid form (the "Fungi-Nail Products"). Fungi-Nail Products are sold by dozens of retailers throughout Florida and across the United States.

18. Many consumers, including Plaintiffs, bought Fungi-Nail Products for the purpose of treating nail fungus, based on the product's name and other advertising that suggests that the product is intended to treat, and effective at treating, nail fungus.[2]

---

[1] Defendant categorizes the Fungi-Nail products in its "foot care" line of products, as do retailers. *See* Arcadia Consumer Healthcare, *Foot Care*, *https://arcadiach.com/foot-care/* (last visited Mar. 2, 2026).

[2] As the graphics make clear, the misleading representations are substantially similar on the packaging for the liquid, pen and spray.










19. However, after buying Fungi-Nail Products based on the false impression that it "CURE[S] AND PREVENT[S]" "NAIL" "FUNGI" with "MAXIMUM STRENGTH" efficacy and applying it to their nails, consumers do not experience any improvement in their health as it relates to the presence of nail fungus.

20. Despite the name "Fungi-Nail," which suggests that the products are intended to treat, and effective at treating nail fungus, Fungi-Nail Products contain fine print on a back label indicating that the product is *not* meant to treat nail fungus, nor is it effective at doing so.[3]

21. Defendant was aware that many consumers do not read portions of products' back label fine print purporting to disclaim the name's assertion and other front-label representations, and was aware Fungi-Nail Products have no ability to treat nail fungus, yet they proceeded to make those claims on the Fungi-Nail Products' front labels, creating the clear impression that such treatment is possible. The Fungi-Nail Products' labels are therefore materially misleading by plainly giving the impression that they treat nail fungus. Hundreds of thousands of consumers have purchased Fungi-Nail Products with the false belief that they treat nail fungus. Because Fungi-Nail Products do not and cannot treat nail fungus, purchasing consumers have been misled.

---

[3] *See, e.g.*, Kramer Laboratories, Inc., *Why does the Fungi-Nail® labeling say not effective on nails and scalp if it is called Fungi-Nail®?*, *https://funginail.com/faqs/why-does-the-fungi-nail-labeling-say-not-effective-on-nails-and-scalp-if-it-is-called-fungi-nail/* (last visited Mar. 2, 2026).

22. As a result of Defendant's deceptive and misleading practices, Plaintiffs and Class Members were induced to purchase Fungi-Nail Products that do not perform as advertised. Defendant had made millions of dollars in fraudulent sales to individuals who Defendant told were receiving a product capable of treating nail fungus. Defendant's customers, including Plaintiffs and Class Members, did not receive the benefit of their bargain because Fungi-Nail Products do not treat nail fungus.

23. On or around August 2025, Plaintiff White purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Spray from the foot care section of a Walmart store located in Vero Beach, Florida near his residence for approximately $11.00. Plaintiff White has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

24. On or around February 13, 2025, Plaintiff Malone purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Pen, from the Winn-Dixie store located Milton, Florida near his residence for approximately $7.01. Plaintiff Malone has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

25. Plaintiffs would not have purchased Defendant's Fungi-Nail Products if they knew that Fungi-Nail Products do not treat nail fungus.

26. Plaintiffs now know that Defendant's Fungi-Nail Products do not treat nail fungus. Plaintiffs intend to purchase an over-the-counter antifungal product for nail fungus again in the near future. Plaintiffs regularly shop at the same retailers where they purchased Fungi-Nail Products, including Walmart and Winn-Dixie, and will encounter Defendant's Fungi-Nail Products during those shopping trips. Plaintiffs will purchase Fungi-Nail Products in the future if Defendant truthfully labeled the product or reformulated it so that it is effective for nail fungus, but Plaintiffs are currently unable to rely on Defendant's labeling and marketing to determine whether Fungi-Nail Products have been changed or are effective for that purpose. Because of Defendant's ongoing labeling, Plaintiffs face a real and immediate risk of being misled again when shopping for antifungal treatment and they seek injunctive relief to prevent future deception.

27. Plaintiffs are individuals who purchased Fungi-Nail Products at Walmart and Winn-Dixie. When Plaintiffs purchased Fungi-Nail Products, name "Fungi-Nail" suggested that it is a healthcare product intended for the medical treatment of nail fungus. In addition, the front label reads in white capitalized font against a bright red background "Kills Fungus" Front Label Claim.

28. Plaintiffs read the Front Label Claim and relied on it when purchasing Fungi-Nail Products. Plaintiffs believed that the claim "KILLS FUNGUS" for a product named "Fungi-Nail" meant that the product kills all fungus, including, and especially, nail fungus, including toenail fungus.

29. The statement created a false impression. As Arcadia admits, the Fungi-Nail Products do not kill nail fungus.

30. Plaintiffs purchased Fungi-Nail Products believing that they would kill nail fungus. They applied Fungi-Nail Products continuously over a period of several months with no improvement to the fungus on their toenails. Plaintiffs received Fungi-Nail Products that were in fact proven to not kill nail fungus. Plaintiffs did not get the product that was advertised.

31. The Fungi-Nail Products' packaging contains qualifying language on non-front panels, including language stating that the product is "not effective on the scalp or nails," and on certain versions language stating "Not for nail or scalp fungus." These statements do not appear on the principal display panel and are not presented to consumers at the point of sale in a manner that is clear and conspicuous. Nothing on the front label includes an asterisk, callout, or other indicator that would alert a reasonable consumer that the prominent front-label antifungal cure representations, the Front Label Claim, is limited by contradictory statements elsewhere on the package. Plaintiffs did not see any such non-front-panel qualifying language before purchasing because Fungi-Nail Products were displayed for sale front-facing, and the front label did not communicate any ambiguity or need to search other panels for a limitation on nail-fungus efficacy. Even if a consumer later located the non-front-panel language, the placement and wording do not dispel the net impression created by the Front Label Claim at the time of purchase, at most they create a confusing and contradictory message that does not clearly communicate to ordinary consumers that the product is ineffective for treating nail fungus.

32. Reasonable consumers purchase antifungal products in the foot care section to kill fungus on their feet, including fungus on their toes and toenails. No reasonable consumer would purchase a product named "Fungi-Nail" for a purpose other than to kill fungus, including nail fungus.

33. Defendant places products in stores for the express purpose of making sales. Product labeling plays an important role in the consumer purchase decision process for merchandise sold at mass merchandisers such as drug stores and supermarkets.

34. Defendant made false statements of material fact to Plaintiffs and Class Members through the uniform front-label representations on Fungi-Nail Products, including the product name "FUNGI-NAIL" and the statement "KILLS FUNGUS." Together, those front-label representations conveyed to a reasonable consumer that the product kills fungus affecting nails, including nail and toenail fungus, and not merely other types of fungus. Because the front label expressly states "KILLS FUNGUS" and the product is named "FUNGI-NAIL," a reasonable consumer would understand Defendant to be representing that the product kills nail fungus.

35. The representations were false because Fungi-Nail Products are not capable of killing nail fungus as represented.

36. Despite knowing that Defendant's Fungi-Nail Products do not kill nail fungus, Defendant refuses to change Fungi-Nail Products' names, or at the very least, add a front label disclaimer that Fungi-Nail Products do not kill nail fungus. The reason for this is obvious: Fungi-Nail Products' names would be apparently self-contradictory, and very few, if any, consumers would purchase them.

37. Defendant could have, but chose not to, select a more accurate statement to display on the front label of Fungi-Nail Products such as naming the products "Fungi-Foot" or "Fungi-Athlete's" or "Ringworm-Fungi." By placing the word "nail" in the Fungi-Nail Products' names, selling the items in the foot care section, and stating in bright, capitalized letters that the products "KILL[] FUNGUS," Defendant purposely chose to mislead consumers to think that Fungi-Nail Products are intended to kill nail fungus. The statements were false at the time they were made.

38. Reasonable consumers, without any expertise in microbiology, do not know the differences between the different types of fungus and that treatment for fungus on the skin of the foot may not be effective for nail fungus treatment.

39. Despite their knowledge that they do not have any substantiation for the Front Label Claim of Fungi-Nail Products, and despite having sufficient room on the front label of the Fungi-Nail Products to do so, Defendant never attempted, tried, or directed anyone to place the purportedly substantiated back label disclaimer on the front label of the Fungi-Nail Products in lieu of the admittedly unsubstantiated Front Label Claim.

40. Reasonable consumers do not verify or second-guess the accuracy of each marketing claim by reading the fine-print disclaimers that may appear on the back of a package.

This is especially true if they believe the brand to be trustworthy. Reasonable consumers cannot be expected to analyze every line of text that appears on a package before making a purchase.

41. Defendant knew that the claim that the product "KILLS [all] FUNGUS" including "nail" fungus was false when Defendant made it. Defendant possessed and reviewed testing, internal documents, regulatory monographs, complaint data, ingredients and prior enforcement that contradicted the representation that the product "kills nail fungus."

42. Defendant intended that Plaintiffs, and Class Members, rely on the representations. The advertisement was placed on the front labels of Fungi-Nail Products for the sole purpose of inducing customers to purchase Fungi-Nail Products. Defendant understood, or should have understood, that a reasonable person would read the Front Label Claim's promise to indicate that Fungi-Nail Products would kill all fungus, including nail and toenail fungus.

43. The claim that Fungi-Nail Products "KILLS FUNGUS" is a product attribute. Defendant intended for reasonable consumers to instantaneously convert this product attribute into a material benefit, *i.e.*, that purchasing the product would treat and cure the consumer's nail fungus.

44. Plaintiffs and Class Members reasonably relied on the representation that Fungi-Nail Products kill nail fungus.

45. Plaintiff White saw "KILLS FUNGUS" and the "Fungi-Nail" name on the Fungi-Nail Products' label at the Walmart near his residence in Vero Beach, Florida in August 2025, read it and relied on it in purchasing the product. Plaintiff White would not have bought or would have paid less had he known the truth, that the product does not kill or treat nail fungus.

46. Plaintiff Malone saw "KILLS FUNGUS" and the "Fungi-Nail" name on the Fungi-Nail Products' label at the Winn-Dixie near his residence in Milton, Florida on February 13, 2025, read it and relied on it in purchasing the product. Plaintiff Malone would not have bought or would have paid less had he known the truth, that the product does not kill or treat nail fungus.

47. Based on that belief, Plaintiffs and Class Members purchased Fungi-Nail Products. Plaintiffs and Class Members saw, were exposed to, or were reasonably assured by the uniform front labels at the point of sale. The labels were part of the marketing set that reached purchasers in a substantially uniform manner through shelf presence and online listings. Defendant's uniform front-label and marketing statements reached purchasers across Florida through in-store shelf presence and online listings.

48. Because Defendant's Fungi-Nail Products are not capable of killing nail fungus, reasonable consumers are misled and deceived by Defendant's packaging of Fungi-Nail Products.

49. As a result, Plaintiffs and Class Members were harmed when they purchased Fungi-Nail Products that have not been proven to kill nail fungus. Plaintiffs' and Class Members' nail fungus was not treated by Fungi-Nail Products. Plaintiffs and Class Members paid for Fungi-Nail Products that they would not otherwise have purchased.

50. Had Defendant's front-label packaging disclosed that Fungi-Nail Products were incapable of killing nail fungus, such disclosure would have adversely affected consumers' willingness to purchase Fungi-Nail Products. Consumers would see the fact that Fungi-Nail Products are ineffective at killing nail fungus, and such a fact would be material to their purchasing decisions.

51. Plaintiffs' and Class Members' reliance on Defendant's representations was a substantial factor in causing this harm. Had Plaintiffs and Class Members known that Fungi-Nail Products in fact do not kill nail fungus, they would not have purchased Fungi-Nail Products.

52. As a direct and proximate result of Defendant's intentional misrepresentation, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but more than the minimum jurisdictional requirement of this Court. Plaintiffs' and Class Members' damages include the difference between the price paid and the value of the Fungi-Nail Products as received without the represented attribute, together with other reasonably incurred out-of-pocket losses.

53. Had the front label disclosed that Fungi-Nail Products do not kill nail fungus, a reasonable consumer would view that fact as material and would be less likely to purchase Fungi-Nail Products or to pay the price charged. Because Fungi-Nail Products are not capable of killing nail fungus, the Front Label Claim misled consumers, and Plaintiffs and Class Members suffered the damages described above.

54. Defendant's conduct was intentional and in conscious disregard of the truth. Plaintiffs give notice of a claim for punitive damages as permitted by Florida law, subject to the procedures and showing required by Florida Statutes § 768.72.

## Second Cause of Action

**Fraudulent Concealment and Omission**

**(By All Plaintiffs individually and on behalf of the Class against Defendant)**

55. Defendant is a corporation headquartered in Bridgewater, New Jersey, that, among other things, manufactures and sells consumer healthcare products.

56. Defendant sells to retailers for resale certain healthcare products, including products for hair and scalp care, digestive health, vitamins, minerals, supplements, first aid, oral care, cough and cold, and foot care.4 Among Defendant's most successful products is its line of Fungi-Nail products sold in Pen, Ointment, and Liquid form (the "Fungi-Nail Products"). Fungi-Nail Products are sold by dozens of retailers throughout Florida and across the United States.

57. Many consumers, including Plaintiffs, bought Fungi-Nail Products for the purpose of treating nail fungus, based on the product's name and other advertising that suggests that the product is intended to treat, and effective at treating, nail fungus.[5]










58. However, after buying Fungi-Nail Products based on the false impression that it "CURE[S] AND PREVENT[S]" "NAIL" "FUNGI" with "MAXIMUM STRENGTH" efficacy

---

[4] Defendant categorizes the Fungi-Nail products in its "foot care" line of products, as do retailers. *See* Arcadia Consumer Healthcare, *Foot Care*, *https://arcadiach.com/foot-care/* (last visited Mar. 2, 2026).

[5] As the graphics make clear, the misleading representations are substantially similar on the packaging for the liquid, pen and spray.

and applying it to their nails, consumers do not experience any improvement in their health as it relates to the presence of nail fungus.

59. Despite the name "Fungi-Nail," which suggests that the products are intended to treat, and effective at treating nail fungus, Fungi-Nail Products contain fine print on a back label indicating that the product is *not* meant to treat nail fungus, nor is it effective at doing so.[6]

60. Defendant was aware that many consumers do not read portions of products' back label fine print purporting to disclaim the name's assertion and other front-label representations, and was aware Fungi-Nail Products have no ability to treat nail fungus, yet they proceeded to make those claims on the Fungi-Nail Products' front labels, creating the clear impression that such treatment is possible. The Fungi-Nail Products' labels are therefore materially misleading by plainly giving the impression that they treat nail fungus. Hundreds of thousands of consumers have purchased Fungi-Nail Products with the false belief that they treat nail fungus. Because Fungi-Nail Products do not and cannot treat nail fungus, purchasing consumers have been misled.

61. As a result of Defendant's deceptive and misleading practices, Plaintiffs and Class Members were induced to purchase Fungi-Nail Products that do not perform as advertised. Defendant had made millions of dollars in fraudulent sales to individuals who Defendant told were receiving a product capable of treating nail fungus. Defendant's customers, including Plaintiffs and Class Members, did not receive the benefit of their bargain because Fungi-Nail Products do not treat nail fungus.

62. On or around August 2025, Plaintiff White purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Spray from the foot care section of a Walmart store located in Vero Beach, Florida near his residence for approximately $11.00. Plaintiff White has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

63. On or around February 13, 2025, Plaintiff Malone purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Pen, from the Winn-Dixie store located Milton, Florida near his residence for approximately $7.01. Plaintiff Malone has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

---

[6] *See, e.g.,* Kramer Laboratories, Inc., *Why does the Fungi-Nail® labeling say not effective on nails and scalp if it is called Fungi-Nail®?*, *https://funginail.com/faqs/why-does-the-fungi-nail-labeling-say-not-effective-on-nails-and-scalp-if-it-is-called-fungi-nail/* (last visited Mar. 2, 2026).

64. Plaintiffs would not have purchased Defendant's Fungi-Nail Products if they knew that Fungi-Nail Products do not treat nail fungus.

65. Plaintiffs now know that Defendant's Fungi-Nail Products do not treat nail fungus. Plaintiffs intend to purchase an over-the-counter antifungal product for nail fungus again in the near future. Plaintiffs regularly shop at the same retailers where they purchased Fungi-Nail Products, including Walmart and Winn-Dixie, and will encounter Defendant's Fungi-Nail Products during those shopping trips. Plaintiffs will purchase Fungi-Nail Products in the future if Defendant truthfully labeled the product or reformulated it so that it is effective for nail fungus, but Plaintiffs are currently unable to rely on Defendant's labeling and marketing to determine whether Fungi-Nail Products have been changed or are effective for that purpose. Because of Defendant's ongoing labeling, Plaintiffs face a real and immediate risk of being misled again when shopping for antifungal treatment and they seek injunctive relief to prevent future deception.

66. Plaintiffs are individuals who purchased Fungi-Nail Products at Walmart and Winn-Dixie. When Plaintiffs purchased Fungi-Nail Products, name "Fungi-Nail" suggested that it is a healthcare product intended for the medical treatment of nail fungus. In addition, the front label reads in white capitalized font against a bright red background "Kills Fungus" Front Label Claim.

67. Plaintiffs read the Front Label Claim and relied on it when purchasing Fungi-Nail Products. Plaintiffs believed that the claim "KILLS FUNGUS" for a product named "Fungi-Nail" meant that the product kills all fungus, including, and especially, nail fungus, including toenail fungus.

68. The statement created a false impression. As Arcadia admits, the Fungi-Nail Products do not kill nail fungus.

69. Plaintiffs purchased Fungi-Nail Products believing that they would kill nail fungus. They applied Fungi-Nail Products continuously over a period of several months with no improvement to the fungus on their toenails. Plaintiffs received Fungi-Nail Products that were in fact proven to not kill nail fungus. Plaintiffs did not get the product that was advertised.

70. The Fungi-Nail Products' packaging contains qualifying language on non-front panels, including language stating that the product is "not effective on the scalp or nails," and on certain versions language stating "Not for nail or scalp fungus." These statements do not appear on the principal display panel and are not presented to consumers at the point of sale in a manner that is clear and conspicuous. Nothing on the front label includes an asterisk, callout, or other

indicator that would alert a reasonable consumer that the prominent front-label antifungal cure representations, the Front Label Claim, is limited by contradictory statements elsewhere on the package. Plaintiffs did not see any such non-front-panel qualifying language before purchasing because Fungi-Nail Products were displayed for sale front-facing, and the front label did not communicate any ambiguity or need to search other panels for a limitation on nail-fungus efficacy. Even if a consumer later located the non-front-panel language, the placement and wording do not dispel the net impression created by the Front Label Claim at the time of purchase, at most they create a confusing and contradictory message that does not clearly communicate to ordinary consumers that the product is ineffective for treating nail fungus.

71. Defendant made uniform front-label representations about Fungi-Nail Products, including "KILLS FUNGUS," together with the product name "Fungi-Nail," comprising the Front Label Claim.

72. Fungi-Nail Products are not capable of killing nail and toenail fungus as represented. That fact is material to consumers deciding whether to purchase the Fungi-Nail Products and how much to pay.

73. Defendant failed to disclose, clearly and conspicuously on the front label or at the point of sale, that Fungi-Nail Products do not kill nail fungus and do not treat onychomycosis. Defendant also failed to disclose known limits in the Fungi-Nail Products' ability to reach or act within the nail plate.

74. A duty to speak arose because:

a. Defendant made partial and misleading statements on the Front Label Claim that created a false impression about nail fungus efficacy, which required full and fair disclosure of Fungi-Nail Products' inability to kill nail fungus.

b. Defendant possessed superior and exclusive knowledge regarding Fungi-Nail Products' lack of efficacy against nail fungus that was not available to consumers.

c. Defendant undertook to speak about antifungal efficacy and therefore had a duty not to omit facts necessary to make its statements not misleading at the time they were made.

75. Defendant knew the omitted facts. Defendant possessed and reviewed internal testing and development records, ingredient specifications that do not achieve fungicidal activity in the nail plate, regulatory materials governing permissible antifungal claims, and sustained consumer complaint data showing lack of effect on nail fungus.

76. Defendant chose prominent Front Label Claim statements that conveyed nail fungus efficacy and withheld a clear front-label disclosure of Fungi-Nail Products' inability to kill nail fungus. Defendant relegated contrary information, if any existed, to back-label fine print and non-prominent locations that consumers do not typically review at the point of purchase.

77. Defendant concealed and omitted the material facts for the purpose of inducing consumers, including Plaintiffs and Class Members, to rely on the overall message of nail fungus efficacy and to purchase Fungi-Nail Products at the price charged.

78. Plaintiff White saw and relied on the front-label "KILLS FUNGUS" statement and the "Fungi-Nail" name, and was not provided a clear and conspicuous front-label disclosure that Fungi-Nail Products do not kill nail fungus, when he purchased the one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Spray at the Walmart near his residence in Vero Beach, Florida in or about August 2025. Had the omitted facts been disclosed, he would not have purchased Fungi-Nail Products or would have paid less.

79. Plaintiff Malone saw and relied on the front-label "KILLS FUNGUS" statement and the "Fungi-Nail" name and was not provided a clear and conspicuous front-label disclosure that Fungi-Nail Products do not kill nail fungus, when he purchased the one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Pen at the Winn-Dixie near his residence in Milton, Florida on February 13, 2025. Had the omitted facts been disclosed, he would not have purchased Fungi-Nail Products or would have paid less.

80. Plaintiffs' reliance was justifiable. The omission concerned a core performance attribute. The front label contained the only statements a reasonable consumer would see and credit at the point of purchase. No clear front-label disclosure corrected the misleading impression created by Front Label Claim.

81. As a direct and proximate result of Defendant's concealment and omissions, Plaintiffs and Class Members suffered damages. Plaintiffs and Class Members paid money for Fungi-Nail Products that lacked the represented and implied ability to kill nail fungus, including a price premium over the Fungi-Nail Products' true value.

82. Plaintiffs' and Class Members' damages include the difference between the price paid and the value of Fungi-Nail Products as received without the omitted attribute, together with other reasonably incurred out-of-pocket losses.

83. Defendant's concealment and omissions were intentional and in conscious disregard of the truth. Plaintiffs give notice of a claim for punitive damages as permitted by Florida law, subject to the procedures and showing required by Florida Statutes § 768.72.

84. Defendant's uniform front-label statements and the failure to provide a clear front-label disclosure reached purchasers across Florida through in-store shelf presence and online listings.

## THIRD CAUSE OF ACTION

### Negligent Misrepresentation

### (By All Plaintiffs individually and on behalf of the Class against Defendant)

85. Defendant is a corporation headquartered in Bridgewater, New Jersey, that, among other things, manufactures and sells consumer healthcare products.

86. Defendant sells to retailers for resale certain healthcare products, including products for hair and scalp care, digestive health, vitamins, minerals, supplements, first aid, oral care, cough and cold, and foot care.[7] Among Defendant's most successful products is its line of Fungi-Nail products sold in Pen, Ointment, and Liquid form (the "Fungi-Nail Products"). Fungi-Nail Products are sold by dozens of retailers throughout Florida and across the United States.

87. Many consumers, including Plaintiffs, bought Fungi-Nail Products for the purpose of treating nail fungus, based on the product's name and other advertising that suggests that the product is intended to treat, and effective at treating, nail fungus.[8]

---

[7] Defendant categorizes the Fungi-Nail products in its "foot care" line of products, as do retailers. *See* Arcadia Consumer Healthcare, *Foot Care*, *https://arcadiach.com/foot-care/* (last visited Mar. 2, 2026).

[8] As the graphics make clear, the misleading representations are substantially similar on the packaging for the liquid, pen and spray.




88. However, after buying Fungi-Nail Products based on the false impression that it "CURE[S] AND PREVENT[S]" "NAIL" "FUNGI" with "MAXIMUM STRENGTH" efficacy and applying it to their nails, consumers do not experience any improvement in their health as it relates to the presence of nail fungus.

89. Despite the name "Fungi-Nail," which suggests that the products are intended to treat, and effective at treating nail fungus, Fungi-Nail Products contain fine print on a back label indicating that the product is *not* meant to treat nail fungus, nor is it effective at doing so.[9]

90. Defendant was aware that many consumers do not read portions of products' back label fine print purporting to disclaim the name's assertion and other front-label representations, and was aware Fungi-Nail Products have no ability to treat nail fungus, yet it proceeded to make those claims on the Fungi-Nail Products' front labels, creating the clear impression that such treatment is possible. The Fungi-Nail Products' labels are therefore materially misleading by plainly giving the impression that they treat nail fungus. Hundreds of thousands of consumers have purchased Fungi-Nail Products with the false belief that they treat nail fungus. Because Fungi-Nail Products do not and cannot treat nail fungus, purchasing consumers have been misled.

---

[9] *See, e.g.,* Kramer Laboratories, Inc., *Why does the Fungi-Nail® labeling say not effective on nails and scalp if it is called Fungi-Nail®?*, *https://funginail.com/faqs/why-does-the-fungi-nail-labeling-say-not-effective-on-nails-and-scalp-if-it-is-called-fungi-nail/* (last visited Mar. 2, 2026).

91. As a result of Defendant's deceptive and misleading practices, Plaintiffs and Class Members were induced to purchase Fungi-Nail Products that do not perform as advertised. Defendant has made millions of dollars in fraudulent sales to individuals who Defendant told were receiving a product capable of treating nail fungus. Defendant's customers, including Plaintiffs and Class Members, did not receive the benefit of their bargain because Fungi-Nail Products do not treat nail fungus.

92. On or around August 2025, Plaintiff White purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Spray from the foot care section of a Walmart store located in Vero Beach, Florida near his residence for approximately $11.00. Plaintiff White has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

93. On or around February 13, 2025, Plaintiff Malone purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Pen, from the Winn-Dixie store located Milton, Florida near his residence for approximately $7.01. Plaintiff Malone has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

94. Plaintiffs would not have purchased Defendant's Fungi-Nail Products if they knew that Fungi-Nail Products do not treat nail fungus.

95. Plaintiffs now know that Defendant's Fungi-Nail Products do not treat nail fungus. Plaintiffs intend to purchase an over-the-counter antifungal product for nail fungus again in the near future. Plaintiffs regularly shop at the same retailers where they purchased Fungi-Nail Products, including Walmart and Winn-Dixie, and will encounter Defendant's Fungi-Nail Products during those shopping trips. Plaintiffs will purchase Fungi-Nail Products in the future if Defendant truthfully labeled the product or reformulated it so that it is effective for nail fungus, but Plaintiffs are currently unable to rely on Defendant's labeling and marketing to determine whether Fungi-Nail Products have been changed or are effective for that purpose. Because of Defendant's ongoing labeling, Plaintiffs face a real and immediate risk of being misled again when shopping for antifungal treatment and they seek injunctive relief to prevent future deception.

96. Plaintiffs are individuals who purchased Fungi-Nail Products at Walmart and Winn-Dixie. When Plaintiffs purchased Fungi-Nail Products, name "Fungi-Nail" suggested that it is a healthcare product intended for the medical treatment of nail fungus. In addition, the front label reads in white capitalized font against a bright red background "Kills Fungus" Front Label Claim.

97. Plaintiffs read the Front Label Claim and relied on it when purchasing Fungi-Nail Products. Plaintiffs believed that the claim "KILLS FUNGUS" for a product named "Fungi-Nail" meant that the product kills all fungus, including, and especially, nail fungus, including toenail fungus.

98. The statement created a false impression. As Arcadia admits, the Fungi-Nail Products do not kill nail fungus.

99. Plaintiffs purchased Fungi-Nail Products believing that they would kill nail fungus. They applied Fungi-Nail Products continuously over a period of several months with no improvement to the fungus on their toenails. Plaintiffs received Fungi-Nail Products that were in fact proven to not kill nail fungus. Plaintiffs did not get the product that was advertised.

100. The Fungi-Nail Products' packaging contains qualifying language on non-front panels, including language stating that the product is "not effective on the scalp or nails," and on certain versions language stating "Not for nail or scalp fungus." These statements do not appear on the principal display panel and are not presented to consumers at the point of sale in a manner that is clear and conspicuous. Nothing on the front label includes an asterisk, callout, or other indicator that would alert a reasonable consumer that the prominent front-label antifungal cure representations, the Front Label Claim, is limited by contradictory statements elsewhere on the package. Plaintiffs did not see any such non-front-panel qualifying language before purchasing because Fungi-Nail Products were displayed for sale front-facing, and the front label did not communicate any ambiguity or need to search other panels for a limitation on nail-fungus efficacy. Even if a consumer later located the non-front-panel language, the placement and wording do not dispel the net impression created by the Front Label Claim at the time of purchase, at most they create a confusing and contradictory message that does not clearly communicate to ordinary consumers that the product is ineffective for treating nail fungus.

101. Defendant represented material facts about the Fungi-Nail Products on the front label and in uniform marketing, including the statement "KILLS FUNGUS," together with the product name "Fungi-Nail," comprising the Front Label Claim.

102. The Front Label Claim conveyed that Fungi-Nail Products kill nail and toenail fungus.

103. The Front Label Claim is false. Fungi-Nail Products are not capable of killing nail fungus as represented.

104. When making the Front Label Claims, Defendant believed the statements to be true, but they were in fact false.

105. Defendant made the Front Label Claims without exercising reasonable care or competence to verify their truth. Defendant should have known the statements were false or misleading based on information available to it, including internal testing and development records, ingredient specifications that do not achieve fungicidal activity in the nail plate, applicable regulatory materials governing permissible antifungal claims, and consumer complaint data about lack of effect on nail fungus.

106. Defendant made the Front Label Claims for the purpose of inducing consumers, including Plaintiffs and Class Members, to rely on them in deciding whether to purchase Fungi-Nail Products and how much to pay.

107. Plaintiff White saw and read "KILLS FUNGUS" and the "Fungi-Nail" name on the label of the product at the Walmart near his residence in Vero Beach, Florida in or about August 2025, and relied on those statements in deciding to purchase the Fungi-Nail Products at the price charged. He would not have purchased Fungi-Nail Products, or would have paid less, had the truth been disclosed.

108. Plaintiff Malone saw and read "KILLS FUNGUS" and the "Fungi-Nail" name on the label of Fungi-Nail Products at the Winn-Dixie located near his residence in Milton, Florida 32570 on February 13, 2025, and relied on those statements in deciding to purchase Fungi-Nail Products at the price charged. He would not have purchased Fungi-Nail Products, or would have paid less, had the truth been disclosed.

109. Plaintiffs' and Class Members' reliance was justifiable because the Front Label Claims appeared on the front label and were presented as factual performance claims, and there was no clear and conspicuous front-label qualification that corrected or cured the message.

110. As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiffs and Class Members suffered damages. Plaintiffs and Class Members paid a price premium over Fungi-Nail Products' true value and paid money for Fungi-Nail Products that lacked the represented ability to kill nail fungus.

111. Plaintiffs' and Class Members' damages include the difference between the price paid and the value of Fungi-Nail Products as received without the represented attribute, together with other reasonably incurred out-of-pocket losses.

112. This claim is pled in the alternative to intentional fraud. To the extent the trier of fact finds Defendant did not knowingly make false statements, Defendant at a minimum acted negligently in making them.

## Fourth Cause of Action

**Violation of the Florida Deceptive and Unfair Trade Practices Act,**

**Fla. Stat. §§ 501.201–201.213**

**(By All Plaintiffs individually and on behalf of the Class against Defendant)**

113. Defendant is a corporation headquartered in Bridgewater, New Jersey, that, among other things, manufactures and sells consumer healthcare products.

114. Defendant sells to retailers for resale certain healthcare products, including products for hair and scalp care, digestive health, vitamins, minerals, supplements, first aid, oral care, cough and cold, and foot care.[10] Among Defendant's most successful products is its line of Fungi-Nail products sold in Pen, Ointment, and Liquid form (the "Fungi-Nail Products"). Fungi-Nail Products are sold by dozens of retailers throughout Florida and across the United States.

115. Many consumers, including Plaintiffs, bought Fungi-Nail Products for the purpose of treating nail fungus, based on the product's name and other advertising that suggests that the product is intended to treat, and effective at treating, nail fungus.[11]

---

[10] Defendant categorizes the Fungi-Nail products in its "foot care" line of products, as do retailers. *See* Arcadia Consumer Healthcare, *Foot Care*, *https://arcadiach.com/foot-care/* (last visited Mar. 2, 2026).

[11] As the graphics make clear, the misleading representations are substantially similar on the packaging for the liquid, pen and spray.










116. However, after buying Fungi-Nail Products based on the false impression that it "CURE[S] AND PREVENT[S]" "NAIL" "FUNGI" with "MAXIMUM STRENGTH" efficacy and applying it to their nails, consumers do not experience any improvement in their health as it relates to the presence of nail fungus.

117. Despite the name "Fungi-Nail," which suggests that the products are intended to treat, and effective at treating nail fungus, Fungi-Nail Products contain fine print on a back label indicating that the product is *not* meant to treat nail fungus, nor is it effective at doing so.[12]

118. Defendant was aware that many consumers do not read portions of products' back label fine print purporting to disclaim the name's assertion and other front-label representations, and was aware Fungi-Nail Products have no ability to treat nail fungus, yet they proceeded to make those claims on the Fungi-Nail Products' front labels, creating the clear impression that such treatment is possible. The Fungi-Nail Products' labels are therefore materially misleading by plainly giving the impression that they treat nail fungus. Hundreds of thousands of consumers have purchased Fungi-Nail Products with the false belief that they treat nail fungus. Because Fungi-Nail Products do not and cannot treat nail fungus, purchasing consumers have been misled.

---

[12] *See*, *e.g.*, Kramer Laboratories, Inc., *Why does the Fungi-Nail® labeling say not effective on nails and scalp if it is called Fungi-Nail®?*, *https://funginail.com/faqs/why-does-the-fungi-nail-labeling-say-not-effective-on-nails-and-scalp-if-it-is-called-fungi-nail/* (last visited Mar. 2, 2026).

119. As a result of Defendant's deceptive and misleading practices, Plaintiffs and Class Members were induced to purchase Fungi-Nail Products that do not perform as advertised. Defendant had made millions of dollars in fraudulent sales to individuals who Defendant told were receiving a product capable of treating nail fungus. Defendant's customers, including Plaintiffs and Class Members, did not receive the benefit of their bargain because Fungi-Nail Products do not treat nail fungus.

120. On or around August 2025, Plaintiff White purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Spray from the foot care section of a Walmart store located in Vero Beach, Florida near his residence for approximately $11.00. Plaintiff White has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

121. On or around February 13, 2025, Plaintiff Malone purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Pen, from the Winn-Dixie store located Milton, Florida near his residence for approximately $7.01. Plaintiff Malone has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

122. Plaintiffs would not have purchased Defendant's Fungi-Nail Products if they knew that Fungi-Nail Products do not treat nail fungus.

123. Plaintiffs now know that Defendant's Fungi-Nail Products do not treat nail fungus. Plaintiffs intend to purchase an over-the-counter antifungal product for nail fungus again in the near future. Plaintiffs regularly shop at the same retailers where they purchased Fungi-Nail Products, including Walmart and Winn-Dixie, and will encounter Defendant's Fungi-Nail Products during those shopping trips. Plaintiffs will purchase Fungi-Nail Products in the future if Defendant truthfully labeled the product or reformulated it so that it is effective for nail fungus, but Plaintiffs are currently unable to rely on Defendant's labeling and marketing to determine whether Fungi-Nail Products have been changed or are effective for that purpose. Because of Defendant's ongoing labeling, Plaintiffs face a real and immediate risk of being misled again when shopping for antifungal treatment and they seek injunctive relief to prevent future deception.

124. Plaintiffs are individuals who purchased Fungi-Nail Products at Walmart and Winn-Dixie. When Plaintiffs purchased Fungi-Nail Products, name "Fungi-Nail" suggested that it is a healthcare product intended for the medical treatment of nail fungus. In addition, the front label reads in white capitalized font against a bright red background "Kills Fungus" Front Label Claim.

125. Plaintiffs read the Front Label Claim and relied on it when purchasing Fungi-Nail Products. Plaintiffs believed that the claim "KILLS FUNGUS" for a product named "Fungi-Nail" meant that the product kills all fungus, including, and especially, nail fungus, including toenail fungus.

126. The statement created a false impression. As Arcadia admits, the Fungi-Nail Products do not kill nail fungus.

127. Plaintiffs purchased Fungi-Nail Products believing that they would kill nail fungus. They applied Fungi-Nail Products continuously over a period of several months with no improvement to the fungus on their toenails. Plaintiffs received Fungi-Nail Products that were in fact proven to not kill nail fungus. Plaintiffs did not get the product that was advertised.

128. The Fungi-Nail Products' packaging contains qualifying language on non-front panels, including language stating that the product is "not effective on the scalp or nails," and on certain versions language stating "Not for nail or scalp fungus." These statements do not appear on the principal display panel and are not presented to consumers at the point of sale in a manner that is clear and conspicuous. Nothing on the front label includes an asterisk, callout, or other indicator that would alert a reasonable consumer that the prominent front-label antifungal cure representations, the Front Label Claim, is limited by contradictory statements elsewhere on the package. Plaintiffs did not see any such non-front-panel qualifying language before purchasing because Fungi-Nail Products were displayed for sale front-facing, and the front label did not communicate any ambiguity or need to search other panels for a limitation on nail-fungus efficacy. Even if a consumer later located the non-front-panel language, the placement and wording do not dispel the net impression created by the Front Label Claim at the time of purchase, at most they create a confusing and contradictory message that does not clearly communicate to ordinary consumers that the product is ineffective for treating nail fungus.

129. Defendant is engaged in trade or commerce in Florida within the meaning of § 501.203. Defendant markets, labels, advertises, distributes, and sells Fungi-Nail Products to consumers in this state.

130. Defendant made uniform front-label and marketing statements about Fungi-Nail Products, including "KILLS FUNGUS," together with the product name "Fungi-Nail." These statements conveyed that the Product kills nail and toenail fungus. This is the Front Label Claim.

131. The Front Label Claim was false or misleading. Fungi-Nail Products are not capable of killing nail fungus as represented. Any contrary or qualifying language was not clear and conspicuous on the front label and did not cure the overall impression at the point of purchase.

132. Defendant's conduct was deceptive or unfair under Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201–501-213. The Front Label Claim was likely to mislead a reasonable consumer acting reasonably under the circumstances, and it concerned a material performance attribute.

133. The deception occurred in Florida at retail stores and through online listings offered to Florida consumers. Defendant placed and maintained the Front Label Claim to drive sales and price.

134. Plaintiff White saw the front-label "KILLS FUNGUS" statement and the "Fungi-Nail" name at the Walmart near his residence in Vero Beach, Florida 32966, in or about August 2025, and purchased one of the Fungi-Nail Products.

135. Plaintiff Malone saw the front-label "KILLS FUNGUS" statement and the "Fungi-Nail" name at the Winn-Dixie near his residence in Milton, Florida 32570, on February 13, 2025, and purchased one of the Fungi-Nail Products.

136. As a direct result of the deceptive Front Label Claim, Plaintiffs purchased Fungi-Nail Products they otherwise would not have purchased, or paid more for them than they otherwise would have paid.

137. Plaintiffs and Class Members paid money for Fungi-Nail Products that lacked the represented ability to kill nail fungus. Plaintiffs and Class Members paid a price premium over the Fungi-Nail Products' true value. The measure of damages includes the difference between the price paid and the value of Fungi-Nail Products received without the represented attribute, together with other reasonably incurred out-of-pocket losses.

138. Defendant's uniform front-label and marketing statements reached purchasers across Florida through in-store shelf presence and online listings. Common questions include whether the Front Label Claims are deceptive or unfair, whether they are material, and whether a price premium resulted. FDUTPA does not require proof of individualized reliance. Predominance is satisfied because liability turns on the uniform label and common proof of price impact.

139. Plaintiffs seek an order enjoining Defendant from making the Front Label Claims and requiring clear and conspicuous front-label disclosure that Fungi-Nail Products do not kill nail fungus, along with corrective advertising as appropriate.

140. Plaintiffs request judgment awarding actual damages, injunctive and declaratory relief, attorneys' fees and costs under § 501.2105, interest, and any further relief the Court deems just and proper.

## FIFTH CAUSE OF ACTION

**Breach of Express Warranty**

**Fla. Stat. §§ 672.313, 672.714–672.715, 672.719**

**(By All Plaintiffs individually and on behalf of the Class against Defendant)**

141. Defendant is a corporation headquartered in Bridgewater, New Jersey, that, among other things, manufactures and sells consumer healthcare products.

142. Defendant sells to retailers for resale certain healthcare products, including products for hair and scalp care, digestive health, vitamins, minerals, supplements, first aid, oral care, cough and cold, and foot care.13 Among Defendant's most successful products is its line of Fungi-Nail products sold in Pen, Ointment, and Liquid form (the "Fungi-Nail Products"). Fungi-Nail Products are sold by dozens of retailers throughout Florida and across the United States.

143. Many consumers, including Plaintiffs, bought Fungi-Nail Products for the purpose of treating nail fungus, based on the product's name and other advertising that suggests that the product is intended to treat, and effective at treating, nail fungus.[14]

---

[13] Defendant categorizes the Fungi-Nail products in its "foot care" line of products, as do retailers. *See* Arcadia Consumer Healthcare, *Foot Care*, *https://arcadiach.com/foot-care/* (last visited Mar. 2, 2026).

[14] As the graphics make clear, the misleading representations are substantially similar on the packaging for the liquid, pen and spray.










144. However, after buying Fungi-Nail Products based on the false impression that it "CURE[S] AND PREVENT[S]" "NAIL" "FUNGI" with "MAXIMUM STRENGTH" efficacy and applying it to their nails, consumers do not experience any improvement in their health as it relates to the presence of nail fungus.

145. Despite the name "Fungi-Nail," which suggests that the products are intended to treat, and effective at treating nail fungus, Fungi-Nail Products contain fine print on a back label indicating that the product is *not* meant to treat nail fungus, nor is it effective at doing so.[15]

146. Defendant was aware that many consumers do not read portions of products' back label fine print purporting to disclaim the name's assertion and other front-label representations, and was aware Fungi-Nail Products have no ability to treat nail fungus, yet they proceeded to make those claims on the Fungi-Nail Products' front labels, creating the clear impression that such treatment is possible. The Fungi-Nail Products' labels are therefore materially misleading by plainly giving the impression that they treat nail fungus. Hundreds of thousands of consumers have purchased Fungi-Nail Products with the false belief that they treat nail fungus. Because Fungi-Nail Products do not and cannot treat nail fungus, purchasing consumers have been misled.

---

[15] *See*, *e.g.*, Kramer Laboratories, Inc., *Why does the Fungi-Nail® labeling say not effective on nails and scalp if it is called Fungi-Nail®?*, *https://funginail.com/faqs/why-does-the-fungi-nail-labeling-say-not-effective-on-nails-and-scalp-if-it-is-called-fungi-nail/* (last visited Mar. 2, 2026).

147. As a result of Defendant's deceptive and misleading practices, Plaintiffs and Class Members were induced to purchase Fungi-Nail Products that do not perform as advertised. Defendant had made millions of dollars in fraudulent sales to individuals who Defendant told were receiving a product capable of treating nail fungus. Defendant's customers, including Plaintiffs and Class Members, did not receive the benefit of their bargain because Fungi-Nail Products do not treat nail fungus.

148. On or around August 2025, Plaintiff White purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Spray from the foot care section of a Walmart store located in Vero Beach, Florida near his residence for approximately $11.00. Plaintiff White has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

149. On or around February 13, 2025, Plaintiff Malone purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Pen, from the Winn-Dixie store located Milton, Florida near his residence for approximately $7.01. Plaintiff Malone has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

150. Plaintiffs would not have purchased Defendant's Fungi-Nail Products if they knew that Fungi-Nail Products do not treat nail fungus.

151. Plaintiffs now know that Defendant's Fungi-Nail Products do not treat nail fungus. Plaintiffs intend to purchase an over-the-counter antifungal product for nail fungus again in the near future. Plaintiffs regularly shop at the same retailers where they purchased Fungi-Nail Products, including Walmart and Winn-Dixie, and will encounter Defendant's Fungi-Nail Products during those shopping trips. Plaintiffs will purchase Fungi-Nail Products in the future if Defendant truthfully labeled the product or reformulated it so that it is effective for nail fungus, but Plaintiffs are currently unable to rely on Defendant's labeling and marketing to determine whether Fungi-Nail Products have been changed or are effective for that purpose. Because of Defendant's ongoing labeling, Plaintiffs face a real and immediate risk of being misled again when shopping for antifungal treatment and they seek injunctive relief to prevent future deception.

152. Plaintiffs are individuals who purchased Fungi-Nail Products at Walmart and Winn-Dixie. When Plaintiffs purchased Fungi-Nail Products, name "Fungi-Nail" suggested that it is a healthcare product intended for the medical treatment of nail fungus. In addition, the front label reads in white capitalized font against a bright red background "Kills Fungus" Front Label Claim.

153. Plaintiffs read the Front Label Claim and relied on it when purchasing Fungi-Nail Products. Plaintiffs believed that the claim "KILLS FUNGUS" for a product named "Fungi-Nail" meant that the product kills all fungus, including, and especially, nail fungus, including toenail fungus.

154. The statement created a false impression. As Arcadia admits, the Fungi-Nail Products do not kill nail fungus.

155. Plaintiffs purchased Fungi-Nail Products believing that they would kill nail fungus. They applied Fungi-Nail Products continuously over a period of several months with no improvement to the fungus on their toenails. Plaintiffs received Fungi-Nail Products that were in fact proven to not kill nail fungus. Plaintiffs did not get the product that was advertised.

156. The Fungi-Nail Products' packaging contains qualifying language on non-front panels, including language stating that the product is "not effective on the scalp or nails," and on certain versions language stating "Not for nail or scalp fungus." These statements do not appear on the principal display panel and are not presented to consumers at the point of sale in a manner that is clear and conspicuous. Nothing on the front label includes an asterisk, callout, or other indicator that would alert a reasonable consumer that the prominent front-label antifungal cure representations, the Front Label Claim, is limited by contradictory statements elsewhere on the package. Plaintiffs did not see any such non-front-panel qualifying language before purchasing because Fungi-Nail Products were displayed for sale front-facing, and the front label did not communicate any ambiguity or need to search other panels for a limitation on nail-fungus efficacy. Even if a consumer later located the non-front-panel language, the placement and wording do not dispel the net impression created by the Front Label Claim at the time of purchase, at most they create a confusing and contradictory message that does not clearly communicate to ordinary consumers that the product is ineffective for treating nail fungus.

157. Defendant is a merchant with respect to Fungi-Nail Products. Defendant labeled, marketed, and sold Fungi-Nail Products to consumers in Florida.

158. Defendant made affirmations of fact and promises about Fungi-Nail Products that became part of the basis of the bargain, including the front-label statement "KILLS FUNGUS" together with the "Fungi-Nail" name and substantially similar uniform claims, the Front Label Claim.

159. The Front Label Claim warranted that Fungi-Nail Products kill fungus, including nail and toenail fungus, and that Fungi-Nail Products possess the performance attributes represented on the labeling and marketing.

160. Plaintiffs purchased Fungi-Nail Products in Florida. Plaintiff White purchased the product at the Walmart near his residence in Vero Beach, Florida 32966, in or about August 2025. The Front Label Claim was part of the basis of his bargain. Plaintiff Malone purchased the product at the Winn-Dixie near his residence in Milton, Florida 32570, on February 13, 2025. The Front Label Claim formed part of the basis of the bargain.

161. Fungi-Nail Products failed to conform to the Front Label Claims. Fungi-Nail Products are not capable of killing nail fungus as warranted.

162. Plaintiffs provided, or Defendant otherwise received, reasonable notice of the breach within a reasonable time after discovery, consistent with Fla. Stat. § 672.607(3)(a). Notice was provided and Defendant had an opportunity to cure but failed or refused to do so.

163. Any purported disclaimer or limitation that attempts to negate the Front Label Claim is ineffective under § 672.316(1), conflicts with the specific affirmations on the front label, is not clear and conspicuous, and does not mention "warranty" in a manner that would negate an express affirmation that formed the basis of the bargain. Any purported disclaimer or limitation that attempts to negate the Front Label Claim is ineffective because it conflicts with the specific affirmations on the front label and is not clear and conspicuous in a manner that would dispel the warranty created at the point of sale.

164. Any purported limitation of remedy fails of its essential purpose under § 672.719 because it would leave Plaintiffs and Class Members without a fair remedy for a nonconforming product that cannot deliver the warranted antifungal performance.

165. Privity alternatives. To the extent privity is required, it is satisfied because Plaintiffs and Class Members purchased from Defendant or their authorized retailers acting as Defendant's agents. In the alternative, Plaintiffs are intended third-party beneficiaries of Defendant's direct express warranties to Florida consumers on Fungi-Nail Products' labeling and advertising, which were designed to induce consumer purchases and to form part of the basis of the bargain.

166. As a direct and proximate result of the breach, Plaintiffs suffered actual damages under § 672.714, including the difference between the value of Fungi-Nail Products as warranted

and the value of Fungi-Nail Products as received, and incidental and consequential damages under § 672.715 where allowed.

167. Plaintiffs seek judgment for damages, incidental and consequential damages where permitted, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability**

**Fla. Stat. §§ 672.314, 672.316, 672.607, 672.714–672.715**

**(By All Plaintiffs individually and on behalf of the Class against Defendant)**

168. Defendant is a corporation headquartered in Bridgewater, New Jersey, that, among other things, manufactures and sells consumer healthcare products.

169. Defendant sells to retailers for resale certain healthcare products, including products for hair and scalp care, digestive health, vitamins, minerals, supplements, first aid, oral care, cough and cold, and foot care.[16] Among Defendant's most successful products is its line of Fungi-Nail products sold in Pen, Ointment, and Liquid form (the "Fungi-Nail Products"). Fungi-Nail Products are sold by dozens of retailers throughout Florida and across the United States.

170. Many consumers, including Plaintiffs, bought Fungi-Nail Products for the purpose of treating nail fungus, based on the product's name and other advertising that suggests that the product is intended to treat, and effective at treating, nail fungus.[17]

---

[16] Defendant categorizes the Fungi-Nail products in its "foot care" line of products, as do retailers. *See* Arcadia Consumer Healthcare, *Foot Care*, *https://arcadiach.com/foot-care/* (last visited Mar. 2, 2026).

[17] As the graphics make clear, the misleading representations are substantially similar on the packaging for the liquid, pen and spray.










171. However, after buying Fungi-Nail Products based on the false impression that it "CURE[S] AND PREVENT[S]" "NAIL" "FUNGI" with "MAXIMUM STRENGTH" efficacy and applying it to their nails, consumers do not experience any improvement in their health as it relates to the presence of nail fungus.

172. Despite the name "Fungi-Nail," which suggests that the products are intended to treat, and effective at treating nail fungus, Fungi-Nail Products contain fine print on a back label indicating that the product is *not* meant to treat nail fungus, nor is it effective at doing so.[18]

173. Defendant was aware that many consumers do not read portions of products' back label fine print purporting to disclaim the name's assertion and other front-label representations, and was aware Fungi-Nail Products have no ability to treat nail fungus, yet they proceeded to make those claims on the Fungi-Nail Products' front labels, creating the clear impression that such treatment is possible. The Fungi-Nail Products' labels are therefore materially misleading by plainly giving the impression that they treat nail fungus. Hundreds of thousands of consumers have purchased Fungi-Nail Products with the false belief that they treat nail fungus. Because Fungi-Nail Products do not and cannot treat nail fungus, purchasing consumers have been misled.

---

[18] *See*, *e.g.*, Kramer Laboratories, Inc., *Why does the Fungi-Nail® labeling say not effective on nails and scalp if it is called Fungi-Nail®?*, *https://funginail.com/faqs/why-does-the-fungi-nail-labeling-say-not-effective-on-nails-and-scalp-if-it-is-called-fungi-nail/* (last visited Mar. 2, 2026).

174. As a result of Defendant's deceptive and misleading practices, Plaintiffs and Class Members were induced to purchase Fungi-Nail Products that do not perform as advertised. Defendant had made millions of dollars in fraudulent sales to individuals who Defendant told were receiving a product capable of treating nail fungus. Defendant's customers, including Plaintiffs and Class Members, did not receive the benefit of their bargain because Fungi-Nail Products do not treat nail fungus.

175. On or around August 2025, Plaintiff White purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Spray from the foot care section of a Walmart store located in Vero Beach, Florida near his residence for approximately $11.00. Plaintiff White has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

176. On or around February 13, 2025, Plaintiff Malone purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Pen, from the Winn-Dixie store located Milton, Florida near his residence for approximately $7.01. Plaintiff Malone has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

177. Plaintiffs would not have purchased Defendant's Fungi-Nail Products if they knew that Fungi-Nail Products do not treat nail fungus.

178. Plaintiffs now know that Defendant's Fungi-Nail Products do not treat nail fungus. Plaintiffs intend to purchase an over-the-counter antifungal product for nail fungus again in the near future. Plaintiffs regularly shop at the same retailers where they purchased Fungi-Nail Products, including Walmart and Winn-Dixie, and will encounter Defendant's Fungi-Nail Products during those shopping trips. Plaintiffs will purchase Fungi-Nail Products in the future if Defendant truthfully labeled the product or reformulated it so that it is effective for nail fungus, but Plaintiffs are currently unable to rely on Defendant's labeling and marketing to determine whether Fungi-Nail Products have been changed or are effective for that purpose. Because of Defendant's ongoing labeling, Plaintiffs face a real and immediate risk of being misled again when shopping for antifungal treatment and they seek injunctive relief to prevent future deception.

179. Plaintiffs are individuals who purchased Fungi-Nail Products at Walmart and Winn-Dixie. When Plaintiffs purchased Fungi-Nail Products, name "Fungi-Nail" suggested that it is a healthcare product intended for the medical treatment of nail fungus. In addition, the front label reads in white capitalized font against a bright red background "Kills Fungus" Front Label Claim.

180. Plaintiffs read the Front Label Claim and relied on it when purchasing Fungi-Nail Products. Plaintiffs believed that the claim "KILLS FUNGUS" for a product named "Fungi-Nail" meant that the product kills all fungus, including, and especially, nail fungus, including toenail fungus.

181. The statement created a false impression. As Arcadia admits, the Fungi-Nail Products do not kill nail fungus.

182. Plaintiffs purchased Fungi-Nail Products believing that they would kill nail fungus. They applied Fungi-Nail Products continuously over a period of several months with no improvement to the fungus on their toenails. Plaintiffs received Fungi-Nail Products that were in fact proven to not kill nail fungus. Plaintiffs did not get the product that was advertised.

183. The Fungi-Nail Products' packaging contains qualifying language on non-front panels, including language stating that the product is "not effective on the scalp or nails," and on certain versions language stating "Not for nail or scalp fungus." These statements do not appear on the principal display panel and are not presented to consumers at the point of sale in a manner that is clear and conspicuous. Nothing on the front label includes an asterisk, callout, or other indicator that would alert a reasonable consumer that the prominent front-label antifungal cure representations, the Front Label Claim, is limited by contradictory statements elsewhere on the package. Plaintiffs did not see any such non-front-panel qualifying language before purchasing because Fungi-Nail Products were displayed for sale front-facing, and the front label did not communicate any ambiguity or need to search other panels for a limitation on nail-fungus efficacy. Even if a consumer later located the non-front-panel language, the placement and wording do not dispel the net impression created by the Front Label Claim at the time of purchase, at most they create a confusing and contradictory message that does not clearly communicate to ordinary consumers that the product is ineffective for treating nail fungus.

184. Defendant is a merchant with respect to Fungi-Nail Products. Defendant designs, labels, markets, and sells Fungi-Nail Products to consumers in Florida in the ordinary course of business.

185. An implied warranty of merchantability arose by operation of law under § 672.314 because Defendant is a merchant of goods of this kind.

186. An implied warranty of merchantability arose by operation of law under Fla. Stat. § 672.314.

187. Fungi-Nail Products were not merchantable at the time of sale because they were not reasonably fit for the ordinary purposes for which such goods are used, as represented on their label and container, including the represented ability to kill fungus affecting nails, and because they did not conform to the affirmations of fact made on the label and container, including "FUNGI-NAIL" and "KILLS FUNGUS," within the meaning of Fla. Stat. § 672.314(2)(f).

188. Plaintiffs purchased Fungi-Nail Products in Florida for the ordinary use to kill nail fungus. Plaintiff White purchased the product at the Walmart near his residence in Vero Beach, Florida 32966, in or about August 2025. Plaintiff Malone purchased the product at the Winn-Dixie near his residence in Milton, Florida 32570, on February 13, 2025.

189. Fungi-Nail Products' lack of merchantability existed at the time Fungi-Nail Products left Defendant's control and persisted through retail sale.

190. Plaintiffs provided, or Defendant otherwise received, notice of breach within a reasonable time after discovery, consistent with § 672.607(3)(a). Notice was provided and Defendant had an opportunity to cure but failed or refused to do so.

191. Any attempted disclaimer of the implied warranty is ineffective. Any disclaimer conflicts with the specific affirmations on the front label, is not clear and conspicuous, does not mention "merchantability" as required by § 672.316(2), and is unconscionable or otherwise unenforceable under the circumstances.

192. Any purported limitation of remedies fails of its essential purpose under § 672.719 because it would leave Plaintiffs and Class Members without a fair remedy for a nonconforming product that cannot deliver the implied-warranted performance.

193. Privity. To the extent privity is required for economic loss, it is satisfied because Plaintiffs purchased from Defendant or from Defendant's authorized retailers acting as agents. In the alternative, Plaintiffs are intended third-party beneficiaries of contracts between Defendant and its authorized retailers, where Defendant's labeling and warranties were directed to and intended to induce purchases by consumers like Plaintiffs. In the further alternative, Defendant sold directly to Florida consumers through its online channels during the class period.

194. As a direct and proximate result of the breach, Plaintiffs and Class Members suffered actual damages under § 672.714, including the difference between the value of Fungi-Nail Products as warranted by law and the value of Fungi-Nail Products as received, and incidental and consequential damages under § 672.715 where allowed.

195. Plaintiffs and Class Members seek judgment for damages, incidental and consequential damages where permitted, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

**SEVENTH CAUSE OF ACTION**[19]

**Unjust Enrichment**

**(By All Plaintiffs individually and on behalf of the Class against Defendant)**

196. Defendant is a corporation headquartered in Bridgewater, New Jersey, that, among other things, manufactures and sells consumer healthcare products.

197. Defendant sells to retailers for resale certain healthcare products, including products for hair and scalp care, digestive health, vitamins, minerals, supplements, first aid, oral care, cough and cold, and foot care.[20] Among Defendant's most successful products is its line of Fungi-Nail products sold in Pen, Ointment, and Liquid form (the "Fungi-Nail Products"). Fungi-Nail Products are sold by dozens of retailers throughout Florida and across the United States.

198. Many consumers, including Plaintiffs, bought Fungi-Nail Products for the purpose of treating nail fungus, based on the product's name and other advertising that suggests that the product is intended to treat, and effective at treating, nail fungus.[21]

---

[19] Pled in the alternative to Plaintiffs' and Class Members' Causes of Action for violation of the FDUTPA and breach of warranties.

[20] Defendant categorizes the Fungi-Nail products in its "foot care" line of products, as do retailers. *See* Arcadia Consumer Healthcare, *Foot Care*, *https://arcadiach.com/foot-care/* (last visited Mar. 2, 2026).

[21] As the graphics make clear, the misleading representations are substantially similar on the packaging for the liquid, pen and spray.










199. However, after buying Fungi-Nail Products based on the false impression that it "CURE[S] AND PREVENT[S]" "NAIL" "FUNGI" with "MAXIMUM STRENGTH" efficacy and applying it to their nails, consumers do not experience any improvement in their health as it relates to the presence of nail fungus.

200. Despite the name "Fungi-Nail," which suggests that the products are intended to treat, and effective at treating nail fungus, Fungi-Nail Products contain fine print on a back label indicating that the product is *not* meant to treat nail fungus, nor is it effective at doing so.[22]

201. Defendant was aware that many consumers do not read portions of products' back label fine print purporting to disclaim the name's assertion and other front-label representations, and was aware Fungi-Nail Products have no ability to treat nail fungus, yet they proceeded to make those claims on the Fungi-Nail Products' front labels, creating the clear impression that such treatment is possible. The Fungi-Nail Products' labels are therefore materially misleading by plainly giving the impression that they treat nail fungus. Hundreds of thousands of consumers have purchased Fungi-Nail Products with the false belief that they treat nail fungus. Because Fungi-Nail Products do not and cannot treat nail fungus, purchasing consumers have been misled.

---

[22] *See, e.g.*, Kramer Laboratories, Inc., *Why does the Fungi-Nail® labeling say not effective on nails and scalp if it is called Fungi-Nail®?*, *https://funginail.com/faqs/why-does-the-fungi-nail-labeling-say-not-effective-on-nails-and-scalp-if-it-is-called-fungi-nail/* (last visited Mar. 2, 2026).

202. As a result of Defendant's deceptive and misleading practices, Plaintiffs and Class Members were induced to purchase Fungi-Nail Products that do not perform as advertised. Defendant had made millions of dollars in fraudulent sales to individuals who Defendant told were receiving a product capable of treating nail fungus. Defendant's customers, including Plaintiffs and Class Members, did not receive the benefit of their bargain because Fungi-Nail Products do not treat nail fungus.

203. On or around August 2025, Plaintiff White purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Spray from the foot care section of a Walmart store located in Vero Beach, Florida near his residence for approximately $11.00. Plaintiff White has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

204. On or around February 13, 2025, Plaintiff Malone purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid Pen, from the Winn-Dixie store located Milton, Florida near his residence for approximately $7.01. Plaintiff Malone has regularly applied the product to his toenails from the date of purchase, with no improvement to his nail fungus.

205. Plaintiffs would not have purchased Defendant's Fungi-Nail Products if they knew that Fungi-Nail Products do not treat nail fungus.

206. Plaintiffs now know that Defendant's Fungi-Nail Products do not treat nail fungus. Plaintiffs intend to purchase an over-the-counter antifungal product for nail fungus again in the near future. Plaintiffs regularly shop at the same retailers where they purchased Fungi-Nail Products, including Walmart and Winn-Dixie, and will encounter Defendant's Fungi-Nail Products during those shopping trips. Plaintiffs will purchase Fungi-Nail Products in the future if Defendant truthfully labeled the product or reformulated it so that it is effective for nail fungus, but Plaintiffs are currently unable to rely on Defendant's labeling and marketing to determine whether Fungi-Nail Products have been changed or are effective for that purpose. Because of Defendant's ongoing labeling, Plaintiffs face a real and immediate risk of being misled again when shopping for antifungal treatment and they seek injunctive relief to prevent future deception.

207. Plaintiffs are individuals who purchased Fungi-Nail Products at Walmart and Winn-Dixie. When Plaintiffs purchased Fungi-Nail Products, name "Fungi-Nail" suggested that it is a healthcare product intended for the medical treatment of nail fungus. In addition, the front label reads in white capitalized font against a bright red background "Kills Fungus" Front Label Claim.

208. Plaintiffs read the Front Label Claim and relied on it when purchasing Fungi-Nail Products. Plaintiffs believed that the claim "KILLS FUNGUS" for a product named "Fungi-Nail" meant that the product kills all fungus, including, and especially, nail fungus, including toenail fungus.

209. The statement created a false impression. As Arcadia admits, the Fungi-Nail Products do not kill nail fungus.

210. Plaintiffs purchased Fungi-Nail Products believing that they would kill nail fungus. They applied Fungi-Nail Products continuously over a period of several months with no improvement to the fungus on their toenails. Plaintiffs received Fungi-Nail Products that were in fact proven to not kill nail fungus. Plaintiffs did not get the product that was advertised.

211. The Fungi-Nail Products' packaging contains qualifying language on non-front panels, including language stating that the product is "not effective on the scalp or nails," and on certain versions language stating "Not for nail or scalp fungus." These statements do not appear on the principal display panel and are not presented to consumers at the point of sale in a manner that is clear and conspicuous. Nothing on the front label includes an asterisk, callout, or other indicator that would alert a reasonable consumer that the prominent front-label antifungal cure representations, the Front Label Claim, is limited by contradictory statements elsewhere on the package. Plaintiffs did not see any such non-front-panel qualifying language before purchasing because Fungi-Nail Products were displayed for sale front-facing, and the front label did not communicate any ambiguity or need to search other panels for a limitation on nail-fungus efficacy. Even if a consumer later located the non-front-panel language, the placement and wording do not dispel the net impression created by the Front Label Claim at the time of purchase, at most they create a confusing and contradictory message that does not clearly communicate to ordinary consumers that the product is ineffective for treating nail fungus.

212. Plaintiffs conferred a direct monetary benefit on Defendant by paying money for Fungi-Nail Products, which generated revenues for Defendant through its sales to Florida consumers, including sales through retail channels and online storefronts.

213. Defendant had knowledge of and appreciated this benefit. Defendant designed, labeled, marketed, distributed, and sold the Fungi-Nail Products for profit and tracked sales and revenues from Florida purchasers.

214. Defendant accepted and retained the benefit under circumstances that make it inequitable to do so. Fungi-Nail Products did not have the attributes represented on the label and in marketing, including its name "FUNGI-NAIL" and "KILLS FUNGUS," and lacked the ability to kill nail fungus as conveyed at the point of sale.

215. Plaintiff White purchased the product at the Walmart near his residence in Vero Beach, Florida 32966, in or about August 2025, and paid money that inured to Defendant's benefit through Defendant's retail distribution chain.

216. Plaintiff Malone purchased the product at the Winn-Dixie near his residence in Milton, Florida 32570, on February 13, 2025, and paid money that inured to Defendant's benefit through Defendant's retail distribution chain.

217. Plaintiffs and Class Members, Florida purchasers, did not receive the full value of what they paid for. They paid a price premium, or paid money, for Fungi-Nail Products that lacked the represented performance attribute. Equity and good conscience do not permit Defendant to retain the amounts obtained from these sales.

218. Privity is not required for this claim. To the extent a direct benefit is required, it is satisfied because Defendant directly benefited from the challenged sales because consumer purchase monies flowed to Defendant through its retail and distribution channels and through direct online sales. In the alternative, the benefit was conferred directly through purchases from Defendant's online storefront during the class period.

219. Plaintiffs and Class Members lack an adequate remedy at law at this stage for the unjust retention of monies paid for a nonconforming product, Fungi-Nail Products. This claim is pled in the alternative to legal and statutory claims and should proceed unless and until an adequate legal remedy is determined to exist and fully compensates the unjust retention.

220. As a direct and proximate result of Defendant's unjust retention of the benefit, Plaintiffs and Class Members are entitled to restitution measured by the monies Defendant unjustly received from the challenged sales, including the difference between the amount paid and the value received.

221. Plaintiffs and Class Members seek restitution and disgorgement of all monies unjustly retained by Defendant from the sale of the Fungi-Nail Products to Plaintiffs and Class Members, together with pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## JURY DEMAND

222. Plaintiffs demand a jury on all triable issues.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, individually and on behalf of the Class, pray for relief as follows for:

1. An order certifying the Class, naming Plaintiffs as Class Representatives, and Plaintiffs' Counsel as Class Counsel;
2. Compensatory damages in an amount to be proven at trial;
3. Restitutionary damages in an amount to be proven at trial;
4. Disgorgement of all monies by which Defendant was unjustly enriched through the sale of the mislabeled Fungi-Nail Products;
5. Treble damages where available;
6. Affirmative injunctive relief mandating that Defendant remove the false advertisements from Fungi-Nail Products and product packaging;
7. Attorneys' fees, costs of suit, and litigation expenses;
8. Establishment of a constructive trust or common fund for the benefit of the Class, as the Court finds appropriate;
9. Pre- and post-judgment interest, costs, and any further equitable relief the Court deems just and proper;
10. Punitive damages; and
11. Such other and further relief as this Court may deem just and proper.

Dated: April 9, 2026

Respectfully submitted,

/s/ *Kevin Lewis*

Kevin Lewis
KL LAW, PLLC
Florida Bar No. 101124
110 SE 6th Street, Suite 1709
Fort Lauderdale, Florida 33301
Email: *kl@kevinlewislaw.com*
Telephone: (954) 551-2295

Jesenia A. Martinez*
WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, California 90017

Email: *jesenia.martinez@wilshirelawfirm.com*
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*pro hac vice* forthcoming

*Attorneys for Plaintiffs and all others similarly situated*